IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-739

Filed 15 July 2026

Swain County, No. 24CV001236-860

GREAT SMOKY MOUNTAINS RAILROAD, LLC, Plaintiff,

v.

MACH 2 INVESTMENTS, LLC; CHRIS GREEN; ISABELLE GREEN; NELSON EDWARD JOHNSTON; AMBER N. VANLUE JOHNSTON; WAYNE ROBERTS; CYNTHIA HYDE; TAMMY R. THOMAS AS TRUSTEE OF THE TAMMY R. THOMAS LIVING TRUST DATED 06/01/2011; IMPACT CHURCH OF NORTH CAROLINA, INC.; and KAY L. THOMAS REVOCABLE TRUST, Defendants.

Appeal by plaintiff from judgment entered 29 April 2025 by Judge Nathaniel J. Poovey in Swain County Superior Court. Heard in the Court of Appeals 10 March 2026.

*Allen Stahl & Kilbourne, PLLC, by Robert C. Carpenter, for the plaintiff-appellant.*

*Matney Mosley, P.C., by David Matney and R. Todd Mosley, for the defendants-appellees Mach 2 Investments, LLC; Chris Green; Isabelle Green, and Tammy R. Thomas as Trustee of the Tammy R. Thomas Living Trust Dated 06/01/2011.*

*Offit Kurman PA, by Robert B. McNeill and Zipporah Basile Edwards, for the defendants-appellees Kay L. Thomas Revocable Trust; Wayne Roberts; and Cynthia Hyde.*

*The Van Winkle Law Firm, by Esther Manheimer and Jonathan H. Dunlap, for the defendants-appellees Nelson Edward Johnston and Amber N. Vanlue Johnston.*

*David Sawyer, for the defendant-appellee Impact Church of North Carolina, Inc.*

TYSON, Judge.

Great Smoky Mountains Railroad, LLC ("Plaintiff") appeals from an order entered 29 April 2025 granting Mach 2 Investments, LLC; ("Mach 2") Chris Green; Isabelle Green; Nelson Edward Johnston; Amber N. Vanlue Johnston; Wayne Roberts; Cynthia Hyde; Tammy R. Thomas as Trustee of the Tammy R. Thomas Living Trust Dated 06/11/2011; Impact Church of North Carolina, Inc.; and, Kay Thomas Revocable Trust's (collectively "Defendants"") motion to dismiss pursuant to Rule of Civil Procedure 12(b)(6). We reverse and remand.

## I. Background

The Tennessee Valley Authority ("TVA") is a federal government owned electric utility corporation with the power of condemnation. *See* 16 U.S.C. § 831 (2024). TVA condemned numerous tracts of land in Swain County to dam the Tuckasegee or Little Tennessee River in order to construct the Fontana Dam. The dam's construction was required to meet demand for electricity generation and for the aluminum industry to aid in critical war manufacturing during World War II.

The damming of the Tuckasegee or Little Tennessee River and flooding would have wiped out existing rail service west of Bryson City. TVA condemned additional properties in Swain County to relocate and reconstruct the railroad tracks from Bryson City to Wesser around the land to be flooded, which became Fontana Lake.

TVA condemned a portion of property owned by S.A. DeHart and assigned it

- 2 -

tract number FR-44. TVA filed a Declaration of Taking on 27 May 1943 and recorded it in Book 66, Page 498 of the Swain County Registry. TVA condemned in fee simple a 150-foot-wide strip of land totaling 3.9+- acres, which bisected the DeHart Property. The taking and deed described tract TR-44 as:

> A strip of land lying in Swain County, North Carolina, on the left side of the Tuckasegee River, approximately 1 1/2 miles southwest of Bryson City, as shown on a map entitled "Southern Railway Bryson City to Wesser" filed in the office of the Register of Deeds of Swain County, and said strip being 150 feet wide, lying 50 feet on the southeast side and 100 feet on the northwest side of the base line of a survey, the base line of the survey and the boundaries of the strip being more particularly described as follows:

> Beginning at a point where the base line crosses the northeast line of S.A. Dehart's land, which is the southwest line of W.M. DeHart's land, at survey station 3516 + 52.5 on the base line of the survey, said point being N. $30^0$ 04' W., 197.1 feet from a point in U.S. Highway No. 19, a corner of the lands of S.A. DeHart, and W.M. DeHart; thence with a 4 degree curve to the right in a southwesterly direction, 1156.45 feet to a point where the base line crosses the west line of S.A. DeHart's land, which is the east line of Mary DeHart's land, at survey station 3528 + 08.95, said point being N. $27^0$ 41' W., 208.37 feet from a point in U.S. Highway No. 19, a corner of the lands of S.A. Dehart, and Mary DeHart.

> The above described strip of land contains 3.9 acres, more or less, subject to such rights as may be vested in the county or state to rights of way for public roads.

> Furthermore, the right to construct the following:

> 1. An outlet ditch within an area lying southeast of and adjacent to the southeast line of the above

> described strip at or near survey station 3519 + 50, extending 40 feet in a southeasterly direction and having a width of 40 feet.
>
> 2. A farm entrance within a area lying southeast of and adjacent to the southeast line of the above described strip at or near survey station 3521 + 30, extending 220 feet in a southerly direction and having a width of 35 feet.

A "farm entrance" or rail crossing has run from U.S. Highway 19 over to the condemned property and has provided public road access to the DeHart Property across the tracks. The farm crossing is described as a "one land (sic), soil and gravel road[way]," "having a width of 35 feet."

The DeHarts contested TVA's estimated value of the parcel taken of $1,250.00 and asserted the fair market value to be $5,000.00. The United States District Court for the Western District of North Carolina appointed a Special Master and three Commissioners to hear the valuation dispute. The Special Master held a hearing and determined Sim A. DeHart was the owner of the DeHart Property on 21 October 1944. The Commissioners held a value hearing and determined the just compensation of the property to be $2,264.00. The United States District Court entered an order consistent with the findings of the Special Master and Commissioners on 15 April 1946. The District Court awarded $2,264.00 as full compensation for the taking of TR-44 in fee simple. The Clerk entered Final Decree on 3 May 1946, which was recorded in Book 71, Page 71 of the Swain County Registry.

The relocated railroad was constructed, and TVA conveyed all property

condemned for the relocation of the railroad on 27 November 1950 to the Southern Railroad Company by deed recorded in Book 71, Page 360 of the Swain County Registry. The Southern Railroad Company quitclaimed its interest by deed of sale for $650,000 and for partial donation of the property to the State of North Carolina on 17 August 1988 and as recorded in Book 438, Page 641 of the Swain County Registry. This quitclaim deed to the State reserves: "all restrictions, conditions, easements, agreements, leases, reservations, encroachments, rights of the public and title defects, whether of record or not."

The North Carolina Department of Transportation ("NCDOT") had previously leased the property to Plaintiff on 29 July 1988. NCDOT, as agency for the State of North Carolina, conveyed the property to Plaintiff on 17 September 1996. This deed is recorded in Book 199, Page 513 of the Swain County Registry. NCDOT retained and reserved the right to maintain and construct "all existing highway/grade crossings *on the State Highway System* . . . as the [NCDOT] deems necessary." (emphasis supplied).

Green Investments, LLC, successor in interest to Sim DeHart, conveyed a 99.10 acre and a 3.37 acre tracts to Mach 2 on 3 May 2013. Plaintiff alleges Mach 2 did not acquire an easement to cross its railroad property. The property remained in the same condition as when the DeHart's owned the parcels. Plaintiff considered the farm crossing as rarely used and posed little risk to their safe operation. Plaintiff considers the farm crossing to be a "railroad crossing" as is defined under 49 CFR §

234.5.

Mach 2 began to subdivide the property in 2021. Mach 2 conveyed a 7.37 acre parcel to Impact Church on 11 February 2021 by deed recorded in Book 487, Page 832 of the Swain County Registry. The deed purported to convey an easement to use the road and crossing over the previously-condemned railroad property. Plaintiff notified Mach 2 verbally and in writing and asserted it owned the road and crossing in fee simple, Mach 2 did not have an easement to cross the road and crossing, and sought to undo the conveying deed to Impact Church. Mach 2 responded it held a real property interest in the road and crossing and had no restrictions on use. Impact Church refused to re-convey its parcel to Mach 2.

Mach 2 further subdivided the property into nine lots and sold the lots to, *inter alia*: Chris Green and Isabelle Green; Nelson Edward Johnston; Wayne Roberts and Cynthia Hyde; and, the Tammy R. Thomas Living Trust Dated 06/11/2011. Three residences have been constructed on three of the subdivided lots.

Plaintiff believed Mach 2's development activities significantly increased its risks by the number and frequency of people using and crossing its property. Plaintiff filed this action for trespass, to quiet title, a declaratory judgment, and to enjoin further crossings of the road, rail crossing, and the previously condemned property. Defendants answered, filed counterclaims, and filed motions to dismiss pursuant to Rules 12(b)(1), 12(b)(6), and 12(b)(7)of the North Carolina Rules of Civil Procedure. The trial court heard Defendants' Rule 12(b)(6) motion to dismiss on 31 March 2025

and granted Defendants' Rule 12(b)(6) motion by order entered 29 April 2025. Defendants' counterclaims remain pending. Plaintiff appeals.

## II.    Jurisdiction

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) (citation omitted). "Generally, there is no right of immediate appeal from interlocutory orders and judgments." *Goldston v. American Motors Corp.*, 326 N.C. 723, 725, 392 S.E.2d 735, 736 (1990). "This general prohibition against immediate appeal exists because [t]here is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders." *Harris v. Matthews,* 361 N.C. 265, 269, 643 S.E.2d 566, 568 (2007) (citation and internal quotation marks omitted).

Our Supreme Court has held two circumstances exist where a party is permitted to appeal an interlocutory order:

> First, a party is permitted to appeal from an interlocutory order when the trial court enters a final judgment as to one or more but fewer than all of the claims or parties and the trial court certifies in the judgment that there is no just reason to delay the appeal. Second, a party is permitted to appeal from an interlocutory order when the order deprives the appellant of a substantial right which would be jeopardized absent a review prior to a final determination on the merits.

*Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994) (internal citations and quotation marks omitted). The trial court did not certify "there is no just reason to delay the appeal" and the order is not immediately appealable under Rule 54(b). *Id.*; N.C. Gen. Stat. § 1A-1, Rule 54(b) (2025).

Plaintiffs concede Defendants' counterclaims remain pending and this appeal is interlocutory. *See Veazey*, 231 N.C. at 362, 57 S.E.2d at 381 ("A final judgment is one which disposes of the cause[s of action] as to all the parties, leaving nothing to be judicially determined between them in the trial court."(citation omitted)).

This Court has recognized "interlocutory orders concerning title . . . must be immediately appealed as vital preliminary issues involving substantial rights adversely affected." *Watson v. Millers Creek Lumber Co.*, 178 N.C. App. 552, 554, 631 S.E.2d 839, 840-41 (2006). The appeal is properly before this Court. *Id.*

### III.    Issues

Plaintiff argues the trial court erred by allowing Defendants' Rule 12(b)(6) motion, dismissing their complaint, and by not adding the State as a necessary party.

### IV.    Defendants Rule 12(b)(6) Motion

### A. Standard of Review

"A Rule 12(b)(6) motion tests the legal sufficiency of the pleading." *Kemp v. Spivey*, 166 N.C. App. 456, 461, 602 S.E.2d 686, 690 (2004) (citation and quotation marks omitted). "When considering a [Rule] 12(b)(6) motion to dismiss, the trial court

need only look to the face of the complaint to determine whether it reveals an insurmountable bar to plaintiff's recovery." *Carlisle v. Keith*, 169 N.C. App. 674, 681, 614 S.E.2d 542, 547 (2005) (citation and quotation marks omitted).

"On appeal from a motion to dismiss under Rule 12(b)(6), this Court reviews *de novo* whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted[.]" *Christmas v. Cabarrus Cty.*, 192 N.C. App. 227, 231, 664 S.E.2d 649, 652 (2008) (citation and internal quotation marks omitted). "A complaint should not be dismissed under Rule 12(b)(6) unless it affirmatively appears that plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim." *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 481, 334 S.E.2d 751, 755 (1985) (citation and quotation marks omitted).

### B. Gap in Title

Defendants argue Plaintiff's purported 1996 deed from NCDOT contains a gap because their chain of title contains a gap in conveyance from the State to NCDOT. Defendants' argument is without merit. The North Carolina Department of Administration has the responsibility and authority to "allocate and reallocate land. . . to the several State agencies." N.C. Gen. Stat. § 143-341(4)(g) (2025). The Department of Administration may transfer outside of the Chapter 146 process described below involving "highway or railroad rights-of-way or other interests or estates in land held for the same or similar purposes." N.C. Gen. Stat. §143-341(4)(k) (2025). Defendants' argument is overruled.

## C. Statutory Analysis

### 1. NCDOT Exemption

Plaintiff argues the trial court erred in dismissing their complaint asserting our General Statutes have exempted dispositions of State property, which is a part of the state transportation system, from having Council of State approval and the signature of the Governor as attested to by the Secretary of State and sealed.

N.C. Gen. Stat. § 146-75 provides:

> Each such conveyance in fee shall be in the usual form of deeds of conveyance of real property and shall be executed in the name of the State of North Carolina, signed in the name of the State by the Governor, and attested by the Secretary of State; and the great seal of the State of North Carolina shall be affixed thereto.

N.C. Gen. Stat. § 146-75 (2025).

N.C. Gen. Stat. § 146-74: provides:

> Every proposed conveyance in fee, including conveyances by gift, of State lands shall be submitted to the Governor and Council of State for their approval. If the proposed conveyance is of State lands with an appraised value of at least twenty-five thousand dollars ($25,000), *and it is for other than a transportation purpose,* the Council of State shall consult with the Joint Legislative Commission on Governmental Operations before making a final decision on the proposed conveyance. Upon approval of the proposed conveyance in fee by the Governor and Council of State, a deed for the land being conveyed shall be executed in the manner prescribed in this Article.

N.C. Gen. Stat. § 146-74 (2025) (emphasis supplied).

N.C. Gen. Stat. § 146-76 provides:

> The manner and method of conveying State lands herein set out shall be the exclusive and only method of conveying State lands in fee. Any conveyance thereof by any other person or executed in any other manner or by any other method shall not be effective to convey the interest or estate of the State in such land.

N.C. Gen. Stat. § 146-76 (2025).

N.C. Gen. Stat. § 146-65(1) outlines an exception to the above statutory scheme, "This Chapter does not apply to any of the following: (1) The acquisition of highway rights-of-way, borrow pits, *or other interests or estates in land acquired* for the same or similar purposes, *or to the disposition thereof*, by the Board of Transportation or the North Carolina Turnpike Authority." N.C. Gen. Stat. § 146-65(1) (2025) (emphasis supplied). Plaintiff asserts their 1996 acquisition by deed from NCDOT is "other interests or estates in land" and "the disposition thereof" is exempt from the statutory scheme in N.C. Gen. Stat. § 146-74 (2025). As such, the conveyance does not require the approval of the Council of State and the signature of the Governor as attested to by the Secretary of State and sealed. N.C. Gen. Stat. §§ 146-74-5 (2025).

### 2. *Canons of Construction*

"The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citing *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998)). "The best indicia of that intent are the [plain] language of the statute . . . , the spirit of the act

and what the act seeks to accomplish." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citations omitted).

"When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself[.]" *State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010). "Interpretations that would create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible." *Taylor v. Robinson*, 131 N.C. App. 337, 338, 508 S.E.2d 289, 291 (1998) (internal quotation marks and ellipses omitted) (citing *Meyer v. Walls,* 122 N.C. App. 507, 512, 471 S.E.2d 422, 426 (1996), *aff'd in part, rev'd in part,* 347 N.C. 97, 489 S.E.2d 880 (1997)).

"'[S]tatutes *in pari materia* must be read in context with each other.'" *News & Observer Publ'g Co. v. Wake Cty Hosp. System, Inc.*, 55 N.C. App. 1, 7, 284 S.E.2d 542, 546 (1981) (quoting *Cedar Creek Enters. v. Dep't of Motor Vehicles*, 290 N.C. 450, 454, 226 S.E.2d 336, 338 (1976)). "'*In pari mareria*' is defined as '[u]pon the same matter or subject.'" *Id.* at 7-8, 284 S.E.2d at 546 (quoting Black's Law Dictionary 898 (4th ed. 1968)).

Exemptions to a general rule must be read narrowly. *See Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739, 103 L. Ed. 2d 753, 767 (1989) ("In construing provisions . . . in which a general statement of policy is qualified by an exception, we usually read the exception narrowly in order to preserve the primary operation of the provision."). An exception must not be interpreted so broadly as to "swallow the rule."

*See Cuomo v. Clearing House Ass'n, L.L.C.*, 557 U.S. 519, 530, 174 L. Ed. 2d 464, 473 (2009) (rejecting a statutory interpretation of a statutory exception which would "swallow the rule").

N.C. Gen. Stat. § 136-5.1 defines the "transportation system" as "all modes of transportation infrastructure owned and maintained by the North Carolina Department of Transportation, including roads, highways, *rail,* ferry, aviation, public transportation, and bicycle and pedestrian *facilities*" supports the proposition the railway is "other interests or estates in land" and includes the right of "the disposition thereof." N.C. Gen. Stat. § 146-65(1) (2025) (emphasis supplied).

### D. Void or Voidable Deed

Presuming, without deciding, the exception from N.C. Gen. Stat. § 146-65(1) does not apply to NCDOT's deed transfer to property to railroads, Plaintiff's deed is not void on its face. *Id.*; N.C. Gen. Stat. § 146-66 (2025).

"A thing is void, which is done against [the] law at the very time of doing it, and when no person is bound by the act; but a thing is voidable which is done by a person who ought not to have done it, but who nevertheless, cannot avoid it himself, after it is done." *Martin v. Cowles*, 18 N.C. 29, 32 (1834).

Our General Statutes provide the title is only voidable at the discretion of the State, by action "of the Governor and Council of State." *See* N.C. Gen. Stat. § 146-66 (2025) ("Any sale, lease, rental, or other disposition of State lands or of any interest or right therein, made or entered into contrary to the provisions of this Chapter, shall

be voidable in the discretion of the Governor and Council of State."); N.C. Gen. Stat. § 143-341(e) (2025) ("To make all sales of real property (including marshlands or swamplands) owned by the State or by any State agency, with the approval of the Governor and Council of State in each instance. All conveyances in fee by the State shall be executed in accordance with the provisions of G.S. 146-74 through 146-78. Any conveyance of land made or contract to convey land entered into without the approval of the Governor and Council of State is voidable in the discretion of the Governor and Council of State. The proceeds of all sales of swamplands or marshlands shall be dealt with in the manner required by the Constitution and statutes.").

A "voidable deed" is "valid until annulled and capable of being affirmed or rejected at the option of one of the parties." *Slattery v. Appy City, LLC*, 385 N.C. 726, 731, 898 S.E.2d 700, 705 (2024) (internal quotation marks and citations omitted). N.C. Gen. Stat. §§ 146-66, and 143-341(e) both provide the mechanism for the State, as putative grantor, to challenge Plaintiff's deed, but only "in the discretion of the Governor and Council of State." *Id.*

## E. *Jus Tertii*

Defendants, individually or collectively, cannot lawfully challenge this deed. *Jus tertii* is a Latin phrase meaning "the right of a third party. The doctrine [establishes] . . . courts do not decide what they do not need to decide." *Jus Tertii*, Black's Law Dictionary (12th ed. 2024). "A *jus tertii* situation arises when the

defendant has no defense of his own but wishes to defeat the plaintiff's action by alleging a defect in the plaintiff's title or the fact that the plaintiff has no title at all." *Fore v. W. N.C. Conference of the United Methodist Church*, 284 N.C. App. 16, 20, 875 S.E.2d 32, 36 (2022) (citing *Jus Tertii Under Common Law and the N.I.L.*, 26 St. John's L. Rev. 135, 135 (1951)).

"In general, *jus tertii* cannot be set up as a defense by the defendant, unless he can in some way connect himself with the third party." *Comm. to Elect Forest v. Employees PAC*, 376 N.C. 558, 592, 853 S.E.2d 698, 723 (2021) (quoting *Holmes v. Godwin*, 69 N.C. 467, 470 (1873)).

Plaintiff further asserts its deed was ratified by operation of law twenty-one years after it was entered and recorded in 1996 and challenges its deed's validity is estopped. In light of our decision, it is unnecessary to and we do not reach this argument.

## V. State as a Necessary Party

Plaintiff argues the trial court erred by not naming the State as a necessary party. Defendants do not assert any claim of ownership over the property. They instead purport to assert the State continues to own the railroad property NCDOT had deeded to Plaintiffs. Defendants filed a Rule 12(b)(7) motion asserting the State was a necessary party before the trial court. This motion was not ruled upon. As held above Plaintiff either owns the property in fee simple or it remains in lawful possession as a holdover lessee from the State, and the property was, is, and remains

an active railroad corridor under federal law. 49 U.S.C. § 10501(b) (2024).

Under Defendants' arguments and on the grounds the trial court allowed Defendants' Rule 12(b)(6) motion, a valid judgment cannot be rendered without the presence of such parties as their absence would prejudice their rights or the rights of others. N.C. Gen. Stat. § 1A-1, Rule 19 (2025); *Rice v. Randolph,* 96 N.C. App. 112 (1989). Holders of an easement may have a material interest in the subject matter of a controversy. *See N. Carolina Dep't of Transp. v. Stagecoach Vill.,* 174 N.C. App. 825, 826, 622 S.E.2d 142, 143 (2005). Here, presuming, *arguendo* and without deciding, the State retains *any* title to the condemned property, NCDOT could maintain a material interest in the property and its use, and due to the prior uncontested 1988 lease between Plaintiff and the State, which predates NCDOT's deed to Plaintiff.

In *Rice,* our Court remanded the cause for a new trial to be held with joinder of all necessary parties. This Court addressed the question of whether an easement has been extinguished, and held "a dispute as to the extinguishment of a . . . easement by abandonment or adverse possession cannot be resolved without the joinder of the grantor . . . who retain[s] fee title to the soil . . ." and "those owners of interests in the easement have a material interest in the subject matter of the controversy, and their interest will be directly affected by court's decision." *Rice,* 96 N.C. App. at 114, 384 S.E.2d at 297. The trial court is to determine whether TVA and any successor in interest to the Southern Railroad Company are also necessary

parties since Defendants' purported "farm crossing" easement reserved to its predecessor-in-title arose within that TVA deed.

## VI. Farm Crossing

Plaintiffs allege after the 1943 deed, the divided DeHart Property was accessed and the railroad tracks crossed by a "farm crossing," a one lane soil and gravel road, "having a width of 35 feet." Upon remand the trial court is to examine Plaintiff's claims and the existence and extent of Defendants' rights of access under this purported "farm crossing" easement, including any unwarranted expansion and overburdening of the easement. *See Hundley v. Michael*, 105 N.C. App. 432, 435, 413 S.E.2d 296, 298 (1992) ("[A]n easement holder may not increase his use so as to increase the servitude or increase the burden upon the servient tenement. If the easement holder makes an unwarranted use of the land in excess of the easement rights held, such use will constitute an excessive use and may be enjoined.") (citations omitted)); *Z.A. Sneeden's Sons, Inc. v. ZP No. 116, L.L.C.*, 190 N.C. App. 90, 660 S.E.2d 204 (2008); *Young v. Lica*, 156 N.C. App. 301, 576 S.E.2d 421 (2003).

Plaintiff, Defendants, and the State, if it retains any interest and consents to join the litigation, would be free to agree to the construction of a safe railroad crossing complying with federal and state safety regulations, and being consistent with current subdivision and building code requirements.

Depending upon the location of the easement being located on either private or public property, and whether NCDOT retains any interest in the property it conveyed

to Plaintiff, it has jurisdiction over grade crossings, as provided in N.C. Gen. Stat. § 136-20(f) (2025).  In the deed, NCDOT retained and reserved the right to maintain and construct "all existing highway/grade crossings *on the State Highway System . . .* as the [NCDOT] deems necessary."  (emphasis supplied).  If applicable, NCDOT is empowered to issue orders requiring the party responsible to alter crossings deemed dangerous or that unreasonably impede traffic, ensuring public safety and convenience.  Federal jurisdiction and regulations also control an "active railway corridor" and a "railroad crossing" as is defined under 49 CFR § 234.5.

## VII.    Conclusion

The trial court erred in granting Defendants' Rule 12(b)(6) motion to dismiss. Plaintiff holds a valid estate in the railroad property, whether as a holdover tenant, under a purportedly voidable deed, or as fee simple owner.  Defendants do not have standing to attack Plaintiff's deed from NCDOT. *Fore*, 284 N.C. App. at 20, 875 S.E.2d at 36.

The order of the trial court is reversed, and this cause is remanded for further proceedings as are consistent with this opinion.  *It is so ordered.*

REVERSED AND REMANDED.

Judges CARPENTER and FLOOD concur.